UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOLUS ALTERNATIVE ASSET MANAGEMENT LP,<br><br>   Plaintiff,<br><br> -against-<br><br>GSO CAPITAL PARTNERS L.P., HOVNANIAN ENTERPRISES, INC., K. HOVNANIAN ENTERPRISES, INC., K. HOVNANIAN AT SUNRISE TRAIL III, LLC, ARA K. HOVNANIAN, and J. LARRY SORSBY,<br><br>   Defendants. | No.  18 Civ. 232 (LTS)<br><br>**DECLARATION OF PATRICK HAMBROOK** |

I, Patrick Hambrook, do hereby declare under penalty of perjury:

  1.  I am a Vice President of Solus Alternative Asset Management LP, a privately held investment advisor that specializes in event-driven and distressed investment opportunities. I respectfully submit this Declaration in support of Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction (the "Motion"). I am fully familiar with all matters set forth in this Declaration, based on my own personal knowledge and information and documents that I have reviewed.

  2.  I understand that Solus Alternative Asset Management LP, on behalf of certain of its funds and managed accounts ("Solus" or "Plaintiff"), has initiated a lawsuit against Defendants Hovnanian Enterprises, Inc. ("Hovnanian Enterprises"), K. Hovnanian Enterprises, Inc. ("K. Hovnanian"), and K. Hovnanian at Sunrise Trail III, LLC ("Sunrise Trail," and together with Hovnanian Enterprises and K. Hovnanian, "Hovnanian"), Ara K. Hovnanian and J. Larry Sorsby (the "Individual Defendants"), and GSO Capital Partners L.P. ("GSO" and together with Hovnanian and the Individual Defendants, the "Defendants") in connection with credit default

swaps ("CDS") on debt issued by the Hovnanian Defendants.

3. CDS contracts on Hovnanian debt are actively traded in the over-the-counter CDS market. CDS contracts are governed by standard-form documentation published by the International Swaps and Derivatives Association ("ISDA"), under which a protection seller and protection buyer exchange payments referencing an underlying security (the "reference obligation") issued by an entity like Hovnanian (the "reference entity").

4. In the CDS market, the protection buyer makes upfront and/or periodic payments to the protection seller in exchange for receiving protection, akin to premium payments on an insurance policy. In return for these periodic payments, the protection seller agrees that, upon the occurrence of certain standardized "credit events"—such as the bond issuer's "failure to pay" a debt of $1 million or more when due—it will make a payment to the protection buyer. The par amount of the reference obligation minus the market value of the reference entity's "cheapest-to-deliver" (or lowest-value) outstanding debt determines the amount of the payment owed to the protection buyer.

5. In or around November 2016, Hovnanian's unsecured debt was trading around 60 cents on the dollar. This implied an assessment by the market that a Hovnanian default was very possible. After conducting extensive research, Solus concluded that the market was overestimating the likelihood of Hovnanian defaulting on any of its debts, and began purchasing Hovnanian's publicly issued notes and selling Hovnanian CDS protection contracts. Solus' research, which has remained ongoing, has included:

- An analysis of Hovnanian's financial statements, including but not limited to its Form 10-K Annual Reports and Form 10-Q Quarterly Reports for 2015, 2016 and 2017;

- An analysis of the contractual documents governing Hovnanian's debt instruments, including but not limited to the indentures governing the issuance of K. Hovnanian's 7% Senior Notes due 2019; 8% Senior Notes due 2019; 10% Senior Secured Notes due 2022; and 10.5% Senior Secured Notes due 2024; and

- An analysis of Hovnanian's public statements regarding its diligent efforts and ability to repay its debts, including but not limited to statements made during 2015, 2016, and 2017 in periodic earnings calls.

6. As of the date of this declaration, the net notional amount of outstanding CDS referencing Hovnanian debt is approximately $600 million. On information and belief, GSO was by far the largest buyer of the aforementioned CDS. It is also my understanding that GSO believed that Hovnanian would not be able to refinance or pay off its unsecured debt coming due in 2019, and purchased the CDS protection to profit in the event of Hovnanian's default.

7. At various times, Solus disclosed its position in Hovnanian CDS to both GSO and Hovnanian. Hovnanian and GSO were advised of Solus' CDS position no later than November 29, 2017.

8. As a CDS protection seller, Solus has a contractual relationship with dealers that make markets in Hovnanian CDS, including Barclays, Credit Suisse, BNP Paribas, Barclays, JP Morgan, and Goldman Sachs, each of which bought CDS protection from Solus. It is my understanding that many of these dealers also sold CDS protection to GSO.

9. Over the first half of 2017, market confidence in Hovnanian's ability to repay or refinance its debt obligations improved, culminating in July 2017, when Hovnanian announced that it was refinancing over $700 million in senior secured debt due between 2018 and 2020 by issuing new senior secured notes maturing in 2022 and 2024 (the "10% Notes" and "10.5%

Notes"). Over that period, the price of Hovnanian's unsecured notes due 2019 rose from approximately 60 cents on the dollar to nearly 100 cents on the dollar.

10. I am aware that on December 28, 2017, securities filings revealed that GSO has agreed to provide financing that will allow Hovnanian to refinance its 2019 unsecured notes. As part of this financing, Hovnanian launched an exchange offer to holders of Hovnanian's unsecured 2019 notes earning 8% interest (the "8% Notes") pursuant to which such holders are being solicited to exchange their notes for a combination of (a) cash, (b) newly-issued notes earning 13.5% interest, maturing in 2026, and (c) newly-issued notes earning 5.0% interest, maturing in 2040 (the "Rigged Bond"). Hovnanian has also sought consent from the holders of the 10% Notes and the 10.5% Notes to enter into indenture amendments necessary to complete the proposed transaction.

11. As of December 28, 2017, Solus' holdings included $13,529,000 face amount of 8% Notes, $8,250,000 face amount of 10.5% Notes, and $10,000,000 face amount of Hovnanian's unsecured 2019 notes earning 7% interest. As of December 28, 2017, Solus also held 112,497 shares of Hovnanian common stock. Solus continues to hold these notes and shares as of the date of this declaration. As of December 28, 2017, Solus had sold CDS protection referencing $260,500,000 notional amount of Hovnanian debt, which CDS contracts remain outstanding through today.

12. One analyst at a major investment bank covering Hovnanian has estimated the market value of the Rigged Bond—which has a 5% interest rate and a 22-year maturity—at only 50% of par, meaning that the Rigged Bond would trade at no more than 50 cents on the dollar. Typical terms for comparable unsecured bonds would be 12% interest and a 6-year maturity. As a result of the low market value of the Rigged Bond, that same analyst has estimated that the

total market value of the consideration being offered by Hovnanian in the exchange offer is less than the par amount of the 8% Notes Hovnanian is offering to exchange.

13.     As part of the financing, I understand that Hovnanian has covenanted that it will not make interest payments on tendered 8% Notes that will be sold by K. Hovnanian to Sunrise Trail, its wholly owned subsidiary.  This would result in Hovnanian failing to pay $1.04 million of interest that would come due on May 1, 2018 on the $26 million of 8% Notes that will be owned by Sunrise Trail.  The $1.04 million payment default exceeds the $1 million threshold for a "failure to pay" credit event under standard ISDA CDS contracts, and the $26 million in defaulted debt is below the $40 million threshold that would trigger cross defaults under Hovnanian's outstanding debt facilities.  The tender offer consideration is split between an above-market 13.5% Bond and the below-market Rigged Bond to ensure that there is a "cheapest to deliver" bond (*i.e.,* the Rigged Bond) that will serve to maximize payouts to GSO when its CDS contracts settle in the ISDA auction.

14.     Based on calculations done by Solus, we have concluded that there is approximately $83.5 billion in outstanding notional value of CDX contracts containing Hovnanian debt.  Hovnanian debt is also featured in a host of more exotic derivative products, including index tranches, index options, tranche options, and others.  We have also calculated that there is approximately $1.5 trillion in notional outstanding in the entire CDS market, and approximately $1.28 trillion of debt outstanding in the Bank of America/Merrill Lynch High Yield market.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on January 10, 2018.

By: _____
Patrick Hambrook